IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 17-20052-JAR-1 |
| MICHAEL R. GASKIN, | |
| Defendant. | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Michael Gaskin's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (Doc. 32). Gaskin seeks release on the ground that he has underlying medical conditions that place him at heightened risk of severe illness if he contracts COVID-19. The government opposes Gaskin's motion. For the reasons set forth in detail below, the Court grants Gaskin's motion.

**I.     Background**

On November 2, 2017, Gaskin pleaded guilty to being a felon in possession of firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), pursuant to a Fed. R. Crim. P. 11(c)(1)(C) plea agreement.[1] On January 23, 2018, the Court sentenced Gaskin to 60 months' imprisonment, to run consecutively to his 9-month revocation sentence imposed in Case No. 09-20151, followed by three years of supervised release.[2]

Gaskin is currently incarcerated at FTC Oklahoma City. He is thirty-six years old, and his projected release date is July 25, 2022. As of March 16, 2021, the Bureau of Prisons

---

[1] Doc. 16.
[2] Doc. 24.

("BOP") reports that FTC Oklahoma City, which has a population of 1,164 inmates, has had 462 inmates recover from COVID-19 and 2 inmates die from COVID-19.[3] The BOP further reports that there are currently 26 active inmate cases and 5 active staff cases, evidencing a current outbreak of COVID-19 at this facility.[4] Encouragingly, 101 inmates and 117 staff at FTC Oklahoma City have fully completed vaccinations.[5]

On January 15, 2021, Gaskin filed a *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), stating that he suffers from hypertension and diabetes. Pursuant to District of Kansas Standing Order 19-1, the FPD subsequently entered an appearance for Gaskin and filed a reply on Gaskin's behalf, seeking a reduction of Gaskin's sentence to time served and a modification of his terms of supervised release to require home confinement until July 25, 2022, his projected date of release from the BOP.[6] The FPD also filed supplemental materials to Gaskin's *pro se* motion, including his medical records and records of educational and vocational courses Gaskin has taken at FTC Oklahoma City.[7] Gaskin's medical records reveal that he has hypertension, hypertensive heart disease, Type 2 diabetes, and hyperlipidemia, and that he takes prescribed medications for these conditions.[8] The United States Probation Office has verified and approved Gaskin's release plan to reside with his wife in Kansas City, Kansas.

---

[3] Federal Bureau of Prisons, *COVID-19 Coronavirus: COVID-19 Cases*, https://www.bop.gov/coronavirus/index.jsp (last visited March 16, 2021).

[4] *Id.*

[5] *Id.*

[6] Doc. 38.

[7] Docs. 38-2. 41-1.

[8] Doc. 41-1.

The government opposes Gaskin's motion, contending that he has failed to exhaust his administrative remedies and that, even if he had, the sentencing factors set forth in 18 U.S.C. § 3553(a) weigh against granting release.

## II.     Legal Standard

"[I]t is well-settled that '[a] district court is authorized to modify a [d]efendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so.'"[9]  Under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018,[10] a court may modify a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  Where this exhaustion requirement is met, a court may reduce the defendant's sentence if it finds that "extraordinary and compelling reasons" warrant a reduction, that a reduction is consistent with "applicable policy statements issued by the Sentencing Commission," and that the applicable sentencing factors set forth in 18 U.S.C. § 3553(a) support a reduction.[11]  The Sentencing Commission has recognized four categories of "extraordinary and compelling reasons": the defendant's medical condition, the defendant's age, the defendant's family circumstances, and a catch-all, "other reasons."[12]

"Unless the basis for resentencing falls within one of the specific categories authorized by section 3582(c), the district court lack[s] jurisdiction to consider [the defendant's] request."[13]

---

[9] *United States v. White*, 765 F.3d 1240, 1244 (10th Cir. 2014) (quoting *United States v. Blackwell*, 81 F.3d 945, 947 (10th Cir. 1996)).

[10] Pub. L. No. 115-391, 132 Stat. 5194.

[11] 18 U.S.C. § 3582(c)(1)(A); *see United States v. Haynes*, 827 F. App'x 892, 895 (10th Cir. 2020).

[12] U.S.S.G. § 1B1.13 cmt. n.1; *see United States v. Gieswein*, 832 F. App'x 576, 577 (10th Cir. 2021).

[13] *United States v. Saldana*, 807 F. App'x 816, 819 (10th Cir. 2020) (quoting *United States v. Brown*, 556 F.3d 1108, 1113 (10th Cir. 2009)) (vacating the district court's order denying a § 3582(c)(1)(A) motion and

"[Tenth Circuit] cases thus require the movant to show that § 3582(c) authorizes relief for the court to have jurisdiction."[14] In other words, if the defendant cannot show that § 3582(c) authorizes relief, the Court must dismiss the motion for lack of jurisdiction.[15]

## III.     Discussion

### A.     Exhaustion

Gaskin submitted a written request to the warden of FTC Oklahoma City on December 6, 2020 seeking compassionate release because of "health issues."[16] Because more than thirty days have passed since he requested compassionate release from the warden, Gaskin argues he has satisfied the exhaustion requirement in § 3582(c).

The government contends Gaskin has not exhausted his administrative remedies because the grounds identified in his request to the warden, "health issues," do not mirror the grounds on which he now seeks compassionate release, hypertension, hypertensive heart disease, Type 2 diabetes, and hyperlipidemia. The government asserts that Gaskin must seek compassionate release from the warden based on COVID-19 and more explicitly describe his medical risk factors in order to satisfy the exhaustion mandate of § 3582(c), raising what is often referred to as "issue exhaustion."[17] But this Court has repeatedly rejected the issue exhaustion challenge to

---

remanding with instructions to dismiss the motion for lack of jurisdiction). *But see United States v. Read-Forbes*, ___ F. App'x ___, No. 20-3104, 2021 WL 423160, at *2 n.1 (10th Cir. Feb. 8, 2021) (questioning, but not deciding, "whether [the defendant]'s failure to satisfy the substantive requirements of § 3582(c)(1)(A) is jurisdictional").

[14] *United States v. Poutre*, 834 F. App'x 473, 474 (10th Cir. 2021).

[15] *Saldana*, 807 F. App'x at 820; *Poutre*, 834 F. App'x at 474. *But see Read-Forbes*, 2021 WL 423160, at *2 n.1.

[16] Doc. 32-2.

[17] *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). The underlying concept is also referred to as "administrative waiver" or "issue waiver," and is based on the notion that an issue not raised in such an administrative proceeding has been "waived." *See generally Advocates for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 429 F.3d 1136, 1148 (D.C. Cir. 2005).

motions for compassionate release.[18]  The Court finds that Gaskin's compassionate release request to the warden of his facility satisfies the exhaustion requirement, and the Court has jurisdiction to decide Valdez's motion based on all grounds presented therein.

### B.      Extraordinary and Compelling Circumstances

Gaskin argues that the existing COVID-19 pandemic and his medical conditions, singularly and in combination, constitute an extraordinary and compelling reason to grant compassionate release.  The government concedes that per Department of Justice policy and Centers for Disease Control and Prevention guidance, Gaskin's medical conditions in the context of the COVID-19 pandemic constitute an extraordinary and compelling reason for compassionate release.  The government contends, however, that when balanced with the 18 U.S.C. § 3553(a) factors, Gaskin fails to demonstrate a situation so severe that release is warranted.  Accordingly, the Court will proceed to consider the § 3553(a) factors.

### C.      Section 3553(a) Factors

Although Gaskin's medical conditions meet the "extraordinary and compelling" standard, satisfying that burden does not resolve the issue of his entitlement to a sentence reduction.  The Court must still consider (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offenses; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentence disparities among similarly-situated defendants.[19]

---

[18] *See United States v. Parada*, No. 5:03-40053-JAR-1, 2020 WL 4589781, at *4–5 (D. Kan. Aug. 10, 2020) (finding that "a judicially created issue-exhaustion requirement is inappropriate" in the compassionate release context because the administrative process for compassionate release is inquisitive rather than adversarial (quoting *Sims*, 530 U.S. at 111)).

[19] *See* 18 U.S.C. § 3553(a)(1)-(6).

Application of the § 3553(a) factors here supports reducing Gaskin's sentence to time served. Gaskin was convicted in 2017 of being a felon in possession of a weapon. Officers encountered Gaskin, who was heavily inebriated and asleep at the wheel of his car, at a traffic light. In the car, occupied solely by Gaskin, officers seized a loaded firearm and recovered evidence indicative of distribution of marijuana and K-2, a synthetic marijuana. Gaskin had two prior felony convictions: a 2003 state court conviction for attempted possession of cocaine and a 2010 conviction in this Court for being a felon in possession. Gaskin was on supervised release for the 2010 conviction at the time of the 2017 offense. Although Gaskin has other convictions, they are largely traffic violations and misdemeanor convictions for drug possession, consistent with his admitted addiction to marijuana.

Given that this was Gaskin's second conviction for felon in possession of firearm, his Sentencing Guidelines range was 46 to 57 months. Nonetheless, Gaskin agreed to a sentence of 60 months under a binding plea agreement, to run consecutively to the 9-month revocation sentence. Thus, he received a total sentence of 69 months for the 2017 conviction and the revocation judgment. Gaskin's projected release date is July 25, 2022, 16 months from now. Reducing Gaskin's sentence by 16 months renders an effective sentence of 44 months for the 2017 conviction, two months short of the low end of his Guidelines range. This is a minor difference, particularly considering that Gaskin's current projected release date reflects his good behavior in prison and his receiving good time credit for that.

Although Gaskin's criminal history of two felon-in-possession convictions is an aggravating circumstance, there are mitigating circumstances that favor a sentence of time served. Gaskin has served well more than half of the total 69-month sentence. During his incarceration, Gaskin has taken many educational, vocational, and therapeutic courses. Despite

Application of the § 3553(a) factors here supports reducing Gaskin's sentence to time served. Gaskin was convicted in 2017 of being a felon in possession of a weapon. Officers encountered Gaskin, who was heavily inebriated and asleep at the wheel of his car, at a traffic light. In the car, occupied solely by Gaskin, officers seized a loaded firearm and recovered evidence indicative of distribution of marijuana and K-2, a synthetic marijuana. Gaskin had two prior felony convictions: a 2003 state court conviction for attempted possession of cocaine and a 2010 conviction in this Court for being a felon in possession. Gaskin was on supervised release for the 2010 conviction at the time of the 2017 offense. Although Gaskin has other convictions, they are largely traffic violations and misdemeanor convictions for drug possession, consistent with his admitted addiction to marijuana.

Given that this was Gaskin's second conviction for felon in possession of firearm, his Sentencing Guidelines range was 46 to 57 months. Nonetheless, Gaskin agreed to a sentence of 60 months under a binding plea agreement, to run consecutively to the 9-month revocation sentence. Thus, he received a total sentence of 69 months for the 2017 conviction and the revocation judgment. Gaskin's projected release date is July 25, 2022, 16 months from now. Reducing Gaskin's sentence by 16 months renders an effective sentence of 44 months for the 2017 conviction, two months short of the low end of his Guidelines range. This is a minor difference, particularly considering that Gaskin's current projected release date reflects his good behavior in prison and his receiving good time credit for that.

Although Gaskin's criminal history of two felon-in-possession convictions is an aggravating circumstance, there are mitigating circumstances that favor a sentence of time served. Gaskin has served well more than half of the total 69-month sentence. During his incarceration, Gaskin has taken many educational, vocational, and therapeutic courses. Despite

reporting that he has difficulty reading, he has obtained his GED.  He has taken coursework with a goal of obtaining a commercial driver's license.  And, there is no indication that he has had disciplinary violations.  The government points to a disciplinary charge of possessing a sharpened weapon, but that was in 2010, while Gaskin was incarcerated for his 2010 federal conviction.

Furthermore, Gaskin has an approved release plan.  He will reside with his wife in their home in Kansas City, Kansas, and he requests that his conditions of supervised release be modified to require home confinement until July 25, 2022.  A sentence of time served, followed by a three-year term of supervised release with an added supervised-release condition of home confinement until July 25, 2022, will serve the interests of deterrence and protection of the public, while protecting Gaskin from contracting COVID-19.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Michael Gaskin's Motion for Compassionate Release (Doc. 32) is **granted**.  The Court reduces Gaskin's sentence to time served.

**IT IS FURTHER ORDERED** that Gaskin's three-year term of supervised release shall start immediately upon his release from the Bureau of Prisons.  All previously imposed terms and conditions of Gaskin's term of supervised release shall remain in effect.  **In addition, during that term of supervised release, Gaskin shall be on home confinement until July 25, 2022 and is restricted to his residence at all times except for medical necessities and court appearances or other activities specifically approved by the U.S. Probation Officer.  Gaskin will be required to wear a location monitoring device, which will include Radio Frequency, Global Positioning System and/or Random Tracking at the discretion of the U.S. Probation Officer, and shall abide by all technology requirements.  Gaskin must follow all location**

**monitoring procedures specified by the U.S. Probation Officer, and must contribute toward the cost, to the extent he is financially able to do so, as directed by the Court and/or U.S. Probation Officer.** Gaskin shall self-quarantine during the first fourteen days of his term of supervised release.

**IT IS FURTHER ORDERED** that there being a verified residence and an appropriate release plan in place, this Order is stayed for up to fourteen days to make appropriate travel arrangements and to ensure Gaskin's safe release. Gaskin shall be released as soon as appropriate travel arrangements have been made and it is safe for him to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangement and ensure Gaskin's safe release, then the parties shall immediately notify the Court and show cause why the stay should be extended.

**IT IS SO ORDERED.**

Dated: March 16, 2021

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE